Rec 067594

ORIGINAL

FILED
JAN 16 2008
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**COMMODITY SOLUTIONS, LLC,**
700 Gemini Road, Suite 100
Houston, Texas 77058

**Plaintiff,**

**v.**

**UNITED STATES OF AMERICA,**

**Defendant.**

No. **08-28 C**

## COMPLAINT

Commodity Solutions, LLC ("Commodity"), by its undersigned attorneys, alleges as follows:

## INTRODUCTION

1. This is an action seeking: (i) a reversal of Defendant's rejection of Plaintiff's mistake in bid claim; (ii) a reversal of Defendant's partial termination of the Contract between Plaintiff and Defendant for default by either reinstating the lentil portion of that Contract or terminating the lentil portion of the Contract for convenience; and (iii) other relief.

## JURISDICTION

2. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1491(a)(1) and (2), and 41 U.S.C. § 609(a)(1).

## NATURE OF THE CASE

3. This action is an appeal of a January 17, 2007 final decision issued by Robert Buxton, a Contracting Officer for Defendant (the "Contracting Officer") denying Commodity's

mistake in bid claim and a January 22, 2007 final decision issued by the Contracting Officer partially terminating the Contract for default (collectively, the "Final Decisions").

## PARTIES

4. Commodity is a corporation organized under the laws of the State of Delaware with offices and a principal place of business at 700 Gemini Road, Suite 100, Houston, Texas 77058.

5. Commodity is a "women-owned small business concern" as defined in FAR 2.101.

6. Commodity has significant experience in the packaging, transloading, and warehouse distribution of agricultural products.

7. Commodity has at least two years of experience supplying and distributing agricultural products to the government.

8. Defendant is the United States acting by and through the Department of Agriculture ("Defendant").

## GENERAL ALLEGATIONS

9. On November 2, 2006, Commodity submitted a bid in response to Defendant's Solicitation for Commodities for Export Programs, Solicitation Number 116 (the "Solicitation"). A copy of the Solicitation and all amendments thereto is attached as Exhibit A.

10. Commodity's bid prices were based on a quotation (the "Superior Quotation") submitted by Superior Grains, Inc. ("Superior"). A copy of the Superior Quotation is attached as Exhibit B.

11. The Superior Quotation offered to supply to Commodity green peas at a price of $204 per metric ton and lentils at a price of $242 per metric ton.

12. In accordance with Amendment 1 to the Solicitation, 10,900 metric tons of peas and lentils were set-aside for small businesses.

13. On November 2, 2006, Defendant awarded to Commodity Contract Number VEP203162 for the supply of 900 metric tons of dry lentils and 1,800 metric tons of whole dry green peas (the "Contract"). A copy of the Contract is attached as Exhibit C.

14. The Contract required Commodity to supply 900 metric tons of whole dry green peas at a price of $235.35 per metric ton (1,984,140 pounds at a price of $10.6754 Cwt).

15. The Contract also required Commodity to supply 900 metric tons of whole dry green peas at a price of $246.35 per metric ton (1,984,140 pounds at a price of $11.1744 Cwt).

16. Further, the Contract required Commodity to supply 900 metric tons of dry lentils at a price of $278.85 per metric ton (1,984,140 pounds at a price of $12.6486 Cwt).

17. On November 3, 2006, the day after Commodity received notice of the Contract award, Superior notified Commodity that there appeared to be a mistake in Commodity's bid.

18. Specifically, on November 3, 2006, Superior sent Commodity an e-mail informing Commodity that:

> Per our phone conversation, this is very unfortunate, as soon as I saw the results from KCCO, I knew there was a problem. We offered as below just like the yellow splits at our plant. *You needed to add the freight* and that is why I gave you the plant and railroad origination so you knew which rate to bid. I hope they will let you out of your bid.

Attached as Exhibit D hereto (emphasis added).

19. The Superior Quotation read:

> Superior Grains, Inc. offers the following:
>
> 10 hopper cars, Lentils, US#3 or better, bulk from Crosby, ND on CPRS, @$242/MT

> 10 hopper cars, Green Peas, US#2 or better, bulk from Williston on BNSF/Crosby on CPRS, @$204/MT
>
> Grade and weight final at Origination.

*See* Exhibit B.

20. Once Superior informed Commodity that the prices in the Superior Quotation did not include the rail freight from North Dakota to Houston, since Commodity's bid price assumed that the rail freight was included in Superior's quote, Commodity identified that it had made a mistake in its bid.

21. On November 7, 2006, Commodity notified Defendant that it made a mistake in its bid in response to the Solicitation.

22. In a letter to Defendant dated November 9, 2006, Commodity noted:

> The serious mistake was I left out the rail freight from North Dakota to Houston which represents a total gross cost of approximately $160,000. Unfortunately, the margins we figured in to the bid were our usual receiving, packaging, and container stuffing rates. Therefore, we have a tremendous loss facing the company.
>
> In this letter, I am asking you what my options may be in trying to resolve the problem.

23. Defendant responded to Commodity's letter on November 14, 2006 and requested information to substantiate Commodity's mistake in bid claim in accordance with FAR Part 14.407-4, "Mistakes After Award."

24. On December 28, 2006, Commodity provided Defendant with its justification and supporting documentation for its mistake in bid claim.

25. Commodity included in its justification package: (i) a narrative explaining the mistake in bid; (ii) a sworn statement from James W. McPherson, Jr. attesting to the mistake in bid; (iii) e-mail correspondence from Superior identifying the mistake in bid; and (iv) other

quotations to support Commodity's position that it was reasonable for Commodity to assume that freight was included in the quoted prices.

26. Despite the fact that Commodity provided the notification of a mistake in bid on November 27, 2006, Defendant issued to Commodity three (3) Notices to Deliver for the lentils and two (2) Notices to Deliver for the green peas.

27. Notice to Deliver VEP20034138 requested the shipment of 859,794 pounds of dry lentils (7,800 50 kg bags) at a price of $12.64860 Cwt to be shipped between December 27, 2006 and January 20, 2007.

28. Notice to Deliver VEP20034146 requested the shipment of 705,472 pounds of dry lentils (6,400 50 kg bags) at a price of $12.64860 Cwt to be shipped between December 27, 2006 and January 20, 2007.

29. Notice to Deliver VEP20034143 requested the shipment of 418,874 pounds of dry lentils (3,800 50 kg bags) at a price of $12.64860 Cwt to be shipped between December 27, 2006 and January 20, 2007.

30. Notice to Deliver VEP20034136 requested the shipment of 1,984,140 pounds of whole dry green peas (18,000 50 kg bags) at a price of $10.67540 Cwt to be shipped between December 27, 2006 and January 20, 2007.

31. Notice to Deliver VEP20034137 requested the shipment of 1,984,140 pounds of whole dry green peas (18,000 50 kg bags) at a price of $11.17440 Cwt to be shipped between December 27, 2006 and January 20, 2007.

32. On January 12, 2007, Defendant sent a letter to Commodity advising Commodity that Defendant was considering terminating the Contract for default and requested information to

determine whether Commodity's failure to perform arose from causes beyond Commodity's control and without any fault or negligence on the part of Commodity.

33. On January 16, 2007, Commodity received a letter from Superior notifying Commodity that Superior had not yet shipped the goods to Commodity.

34. On January 17, 2007, Defendant sent a letter to Commodity containing the Contracting Officer's final decision denying Commodity's mistake in bid claim. Commodity received the letter by facsimile on January 18, 2007 and by certified mail on January 22, 2007. A copy of the final decision is attached as Exhibit E.

35. On January 19, 2007, Commodity responded to Defendant's January 12, 2007 letter and reiterated its position that it made a mistake in its bid.

36. On January 19, 2007, Commodity sent an e-mail to Defendant indicating that Commodity was ready and willing to perform the Contract at increased prices to account for the mistake in bid. Specifically, Commodity indicated that the lentils were in the process of being loaded and would arrive at Jacintoport ("JACI") in approximately 17-18 days, would be bagged and packaged into containers at JACI, and would be ready for the ship when it arrived at port on February 11, 2007.

37. Defendant e-mailed Commodity on January 19, 2007, rejecting the proposal for a price increase and indicating that Commodity's delivery plan for the lentils would not permit the cargo to be ready to load by the time the vessel sailed on February 9, 2007. On that basis, Defendant indicated its intent to terminate the lentil portion of the Contract.

38. On January 21, 2007, Commodity sent an e-mail to Defendant responding to Defendant's threat to terminate the lentil portion of the Contract and indicated that it procured a

substitute cargo for the 900 metric tons of lentils that was shipped to JACI on January 15, 2007 and would be available to be loaded by the time the vessel sailed on February 9, 2007.

39. On January 22, 2007, Defendant sent to Commodity its final decision partially terminating for default the lentil portion of the Contract. Commodity received the letter by facsimile on January 23, 2007 and by certified mail on January 29, 2007. A copy of this final decision is attached as Exhibit F.

40. Defendant reprocured the lentils at a premium price by purchasing the same cargo from Commodity's supplier, Superior, while en route to Commodity, that Commodity intended to supply to Defendant.

41. This appeal is timely.

**COUNT I**

42. Commodity incorporates the preceding paragraphs as if stated in full.

43. Commodity made a mistake in its bid in response to the Solicitation.

44. After award of the Contract, Commodity immediately notified Defendant that it had made a mistake in its bid.

45. Commodity presented clear and convincing evidence to Defendant that the mistake in bid was made.

46. Commodity presented clear and convincing evidence to Defendant that the mistake in bid was so apparent as to have charged Defendant with notice of the probability of the mistake.

47. Defendant's rejection of Commodity's mistake in bid claim was improper.

**COUNT II**

48. Commodity incorporates the preceding paragraphs as if stated in full.

49. Commodity timely asserted a valid mistake in bid claim to Defendant.

50. As a result of negotiations between Commodity and Defendant regarding the resolution of the claim, Commodity's performance under the Contract was delayed.

51. Commodity's delay in its performance of the Contract was beyond the control of Commodity and without the fault or negligence of Commodity.

52. Defendant's termination of the Contract for default was improper.

## COUNT III

53. Commodity incorporates the preceding paragraphs as if stated in full.

54. Commodity timely asserted a valid mistake in bid claim to Defendant.

55. Defendant rejected Commodity's mistake in bid claim.

56. Prior to the expiration of the period of performance, Commodity notified Defendant that it intended to fulfill the contract requirements, despite Defendant's rejection of Commodity's mistake in bid claim.

57. Commodity's delay in its performance of the Contract resulted from a failure of its supplier, Superior, to ship the goods on time.

58. Commodity's delay in its performance of the Contract was beyond the control of Commodity and without the fault or negligence of Commodity.

59. Defendant's termination of the Contract for default was improper.

## COUNT IV

60. Commodity incorporates the preceding paragraphs as if stated in full.

61. Commodity informed Defendant of its mistake in bid immediately after it received the award from Defendant.

62. On January 17, 2007, Defendant rejected Commodity's mistake in bid claim.

63. On January 19, 2007, Commodity notified Defendant that it intended to fulfill the contract requirements.

64. The performance period for the delivery of the lentils expired on January 20, 2007.

65. On January 22, 2007, while Commodity was in the process of procuring the lentils from its supplier, Defendant terminated the lentil portion of the Contract for default.

66. Defendant unreasonably delayed issuing a final decision on Commodity's mistake in bid claim.

67. Defendant terminated the lentil portion of the Contract for default prior to providing Commodity with a reasonable opportunity to perform the Contract.

68. Furthermore, Defendant reprocured the lentils from Commodity's supplier, at a significantly increased price, by purchasing the cargo from the supplier as it was en route to Commodity.

69. Defendant acted in bad faith and in violation of the covenant of good faith and fair dealing when it reprocured the lentils en route to Commodity from Commodity's supplier, in effect preventing Commodity from fulfilling the Contract requirements.

70. Defendant's termination of the Contract for default was improper.

## REQUESTED RELIEF

WHEREFORE, Commodity Solutions, LLC respectfully requests that this Court: (i) reverse Defendant's rejection of Commodity's mistake in bid claim; (ii) reverse Defendant's partial termination of the Contract for Default by either reinstating the lentil portion of the Contract or terminating for convenience the lentil portion of the Contract; and (iii) grant such other relief as it may see just. If the Court converts the termination for default to a termination

for convenience, Commodity hereby requests reimbursement of its termination settlement expenses.

Dated: January 16, 2008

Respectfully submitted,

John G. DeGooyer
FOLEY & LARDNER LLP
3000 K Street, N.W., Suite 500
Washington, D.C. 20007-5143
Telephone (202) 295-4047
Facsimile (202)672-5399

*Counsel of Record for Plaintiff*
*Commodity Solutions, LLC*

**OF COUNSEL:**
George W. Ash
Erin L. Toomey
FOLEY & LARDNER LLP
One Detroit Center
500 Woodward Avenue, Suite 2700
Detroit, MI 48226-3489
Telephone (313) 234-7100
Facsimile (313) 234-2800

# EXHIBIT A

HDR1010500220001018061300KCCO EXPORT - SOLICITATION 116

Solicitation for Commodities for Export Programs
Solicitation 116, October 18, 2006

1. Solicitation Number: 116

2. Solicitation Issue Date: October 18, 2006

3. Issued By:
   United States Department of Agriculture (USDA)
   Kansas City Commodity Office (KCCO)
   International Procurement Division, Stop 8738
   P.O. Box 419205
   Kansas City, MO 64141-6205

4. Solicitation Type: Sealed Bids (IFB)

5. Offer Due Date/Local Time: November 2, 2006, 9:00 A.M.

6. Award Notification Date/Local Time: November 3, 2006, 12:00 P.M.

7. Public Release of Award Date/Local Time: November 3, 2006, 4:00 P.M.

8. Solicitation Information Contact:
   Name: Robert Buxton
   Telephone Number: 816-926-6774
   E-mail: robert.buxton@kcc.usda.gov

9. Internet Address:
   http://www.fsa.usda.gov/FSA/webapp?area=home&subject=coop&topic=pas

10. This Acquisition is:
    /X/ Unrestricted
    /X/ Set Aside
        /X/ Small Business (See schedule of supplies)
    /X/ 8(a) (See schedule of supplies)

NOTICE OF SMALL BUSINESS SET-ASIDE
If specified in the solicitation, certain quantities are set aside exclusively for small business firms under the Small Business Act (15 U.S.C. 631, et seq.).

Bids received for these set-aside quantities from firms who are not small business concerns will not be considered. In the event the Government is unsuccessful in contracting with an eligible small business concern(s) for the set-aside quantities, it may award the quantities to other than small business concerns.

Small businesses that wish to bid on both the set-aside and the non-set-aside quantities shall submit separate bids for each quantity using separate entity codes or shall limit their minimum quantity to the set-aside quantity. Failure to comply with this requirement may cause the entire bid to be considered non-responsive.

NOTICE OF 8(a) ACQUISITION
If specified in the solicitation, the Government may reserve a portion of the requirements for 8(a) firms certified by the Small Business Administration in accordance with the Federal Acquisition Regulation (FAR), Part 19. The Government may increase the reserve to adjust quantities to carlot increments in the event of multiple awards to eligible 8(a) firms. The Government shall offer for award to

each 8(a) firm the lesser of: 1) their quantity bid of each targeted commodity, or 2) their proportional share of each targeted commodity, if the total quantities bid by all eligible 8(a) firms exceeds the amount of each targeted commodity. In no event shall the Government offer for award an amount in excess of an eligible 8(a) firm's maximum quantity, if so established by the Government. If the 8(a) small business firm is a nonmanufacturer, it shall meet the definition and requirements outlined in FAR Part 19. In the event the Government is unsuccessful in contracting with an eligible 8(a) firm for the reserved quantity, it may award the quantities to other than 8(a) firms.

HUBZONE PRICE EVALUATION PREFERENCE
The Government will award contracts to eligible HUBZone bidders as provided in Part 2, Section A.4 of the Master Solicitation for Commodity Procurements at: http://www.fsa.usda.gov/FSA/webapp?area=home&subject=coop&topic=pas-ex-cr. If the bidder elects to waive the preference, they shall do so as provided in Section 14.C., Submission of Offers.

JAVITS, WAGNER, O'DAY ACT (JWOD)(41USC46-48c)
1,890 MT of vegetable oil quantity (20% of the quantity shown under the Schedule of Supplies) is reserved for mandatory procurement from the Government's approved JWOD participating nonprofit agency(ies) in accordance with the JWOD Act and FAR Subpart 8.7. In the event the government does not award the full quantity under the JWOD Act, the government may award the balance under full and open competition.

11. NAICS Codes/Size Standards: See Master Solicitation for Commodity Procurements at: http://www.fsa.usda.gov/FSA/webapp?area=home&subject=coop&topic=pas-ex-cr

12. Delivery Type:
/x/ F.a.s. vessel
/x/ Intermodal plant
/x/ Intermodal bridge
/x/ Intermodal bridge-port point for the Great Lakes

The Government shall consider bids for commodities delivered only to those potential delivery locations listed in the documents titled "Approved Ports/Terminals" and "KC-362 - Standard Abbreviations" found at: http://www.fsa.usda.gov/FSA/webapp?area=home&subject=coop&topic=pas-ex-ap

Note: For Food For Progress, McGovern-Dole Food For Education, and Section 416(b) procurements, "L" designation bid points shall not be considered.

13. Submit Invoices to:
Kansas City Finance Office
Financial Operations Division
Payment Certification Branch, Stop 8578
P.O. Box 419205
Kansas City, MO 64141-6205

For express mail:
Kansas City Finance Office
Financial Operations Division
Payment Certification Branch, Stop 8578
6501 Beacon Drive
Kansas City, MO 64133-4676

For questions concerning invoices contact Invoice Payment Group, Financial Services Center, Fund & Commodity Management Office at 816-926-6205.

14. Submission of Offers:

Bids, modifications, withdrawals of bids, and price adjustments shall be submitted by using the Electronic Bid Entry System (EBES) found at https://wwwaix.fsa.usda.gov/ebes/. Submission of the above by any means other than EBES will be determined nonresponsive.

Web Support Help Desk: 1-800-255-2434, Option #1

Note:
A. Bidders shall provide in the Comments Freeform Section of their EBES bid the DUNS or DUNS+4 number that identifies the bidder's name and address exactly as stated in the bid.

B. Annual Representations and Certifications:
The bidder shall have completed the annual representations and certifications electronically via the Online Representations and Certifications Application (ORCA) website at http://orca.bpn.gov. After reviewing the ORCA database information, the bidder verifies by submission of the bid that the representations and certifications currently posted electronically have been entered or updated within the last 12 months, are current, accurate,, complete, and applicable to this solicitation (including the business size standard applicable to the NAICS code referenced for this solicitation), as of the date of this bid and are incorporated in this bid by reference (see FAR 4.1201). However, if there are any changes to the ORCA information at the time of bid submission, bidder shall provide the changes identifying change by clause number, title, date in the Comments Freeform Section of their EBES bid. Any changes provided by the bidder are applicable to this solicitation only, and do not result in an update to the representations and certifications posted on ORCA.

C. If HUBZone eligible bidders wish to waive the price evaluation preference for HUBZone small business concerns as set forth in 15 U.S.C. 657(a), they shall submit a letter to the Contracting Officer prior to bid opening stipulating their desire to waive the preference. This waiver shall be used for this procurement and valid for all future procurements unless rescinded in writing by the bidder.

D. Bidders acknowledge by submission of their EBES bid that they have received all amendments issued for this solicitation.

15. Schedule of Supplies.
The commodities procured under this solicitation are for the following program(s):

/X/ P.L. 480 Title II
/ / P.L. 480 Title III
/ / Food For Progress
/ / McGovern-Dole Food For Education
/ / Section 416(b)

Bidders may submit bids for less than the quantities indicated. Bidders are encouraged to submit bids for as many shipping points as possible.

| Commodity Requirement | Commodity | Total Requested Metric Tons | SBA Set-Aside Metric Tons | 8(a) Set-Aside Metric Tons |
|---|---|---|---|---|
| BWSF10 | Bulgur Wheat | 6,900 | | |
| | Soy Fortified Bulgur | 5,640 | | |
| CM2 | Cornmeal | | 1,590 | |
| | High Performance Bags | 15,910 | | |
| CSB12 | Corn Soy Blend | | 180 | |
| | High Performance Bags | 1,760 | | |
| DPP3 | Dehydrated Potato Products | | | |
| | Potato Flakes | 70 | | |

| | | | | |
|---|---|---|---|---|
| KCBG7 | Hard Red Winter Wheat | 1,880 | | |
| | Sorghum | 1,490 | | |
| MR19 | Milled Rice | 1,820 | | |
| PL2 | Peas and Lentils | | 11,080 | |
| | Green Peas | 3,500 | | |
| | Lentils | 2,740 | | |
| | Yellow Split Peas | 12,230 | | 920 |
| SFSG12 | Soy Fortified Sorghum Grits | 1,100 | | |
| VO10 | Vegetable Oil | | | |
| | 6/4 Liter Rounds | 9,430 | | |
| WFBF3 | All Purpose Flour | 3,500 | | |
| WSB14 | Wheat Soy Blend | | | |
| | High Performance Bags | 1,700 | | |
| | Regular Bags | 620 | | |
| | Solicitation Total | 70,290 | | |

Commodity requirements are available at:
http://www.fsa.usda.gov/FSA/webapp?area=home&subject=coop&topic=pas-ex-cr

Unique Commodity Specifications Required for this Solicitation:

CSB12 - CORN-SOY BLEND

For this Solicitation, all successful bidders of Corn-Soy Blend shall submit an initial production schedule, including beginning and ending dates, to this office within 5 business days of contract award. The information must also include the production contact person and phone number for each plant location. Any changes to the schedule shall be submitted on a timely basis, as applicable. Production schedules shall be submitted to both of the following individuals via email: Michelle.Howard@kcc.usda.gov, and Reuben.Zepeda@kcc.usda.gov.

In addition, all successful bidders shall provide a secure and controlled area to store government reserve samples. These samples will remain under Government seal. The samples will need to be retained for four months after the end of the shipping period.

DPP3 - Dehydrated Potato Products

70 MT of Dehydrated Potato Flakes for Senegal shall be Type II, Style B, Option A.

MR19 - MILLED RICE

Milled rice for Burkina Faso shall be parboiled, long grain, well-milled, #5/20. The specific product code is RI-PL.

PL2 - PEAS AND LENTILS

8,830 MT of Yellow Split Peas to Kenya, Port of Mombasa must have a maximum moisture level of 13.5%. Product code is YE.

720 MT of Lentils to Sudan, Port of Mombasa must have a maximum moisture level of 13.5%. Product code is LT.

VO10 - VEGETABLE OIL PRODUCTS

Vegetable Oil to Sudan, Port of Djibouti and Port of Mombasa, shall be 100% soybean oil.

WFBF3 - FLOUR PRODUCTS

All Purpose Flour contracted for delivery to f.a.s vessel points shall be fumigated pursuant to the Commodity Requirements Document WFBF3, Section 1.4, C. and D., notwithstanding the time frames referenced in subsection B. Exception: Flour delivered to f.a.s. Houston requires fumigation by the ocean carrier rather than the commodity contractor.

All Purpose Flour to Kenya shall have a maximum moisture of 13.5%. All Flour in excess of 13.5% moisture will be rejected.

16. Shipment/Delivery Schedule:

Shipping periods for all commodities, except PL2, are as follows:

| | |
|---|---|
| Shipping periods for inland plants: | December 6 - December 20, 2006<br>December 21, 2006 - January 5, 2007 |
| Shipping periods for plants Located at the port: | December 21, 2006 - January 5, 2007<br>January 6 - January 20, 2007 |

Shipping periods for PL2 only are as follows:

| | |
|---|---|
| Shipping periods for inland plants: | December 6 - December 27, 2006 |
| Shipping periods for plants located at port: | December 27, 2006 - January 20, 2007 |

For plants located at f.a.s. vessel delivery locations:
The shipping period(s) for plants located at port shall apply only to contracts that are processed and/or bagged within the same port to which delivery will be made. If the commodity is processed and/or bagged at one port for delivery to a different port, the shipping period(s) for inland plants shall apply.

The Government shall issue a Notice(s) to Deliver at least seven (7) calendar days prior to the first day of each period of performance scheduled in the contract. Contractor shall comply with the instructions in the Notice(s) to Deliver. If a Notice to Deliver is issued less than seven (7) calendar days prior to the first day of the contracted period of performance, the performance period shall be extended by the number of days the Notice to Deliver is issued late. Contractor shall not be entitled to any extension of the performance period unless it furnishes evidence satisfactory to the Government that it was prepared to perform during the contracted period of performance.

17. Other Requirements:

Bidders for all commodities except those purchased under commodity requirements MR, PL, DEB, BOT, DPP, DME, DSM, BAR, BWF, and KCBG shall meet the requirements of the Government's Total Quality System Audit (TQSA) program. See the Eligibility of Bidders provision at Part 2, Section A.1(b) in the Master Solicitation for Commodity Procurements.

For commodity requirement KCBG7:
A bidder operating dockside facilities at which there are also berthing facilities for ocean-going vessels may submit bids for delivery f.a.s. vessel at bidder's plant dock, but such bids shall be limited to those quantities bagged at such dockside facilities. If the port has multiple berths, the vendor shall be liable for delivering the commodity to whichever berth has been designated by the steamship line within that port.

The bidder shall also specify in the bid form the minimum quantity for which a vessel will call at their dock. If the quantity bid and accepted by the Government is insufficient for a vessel to call at the plant dock, bidder shall be liable for transportation charges incurred to move the commodity within the port to a public dock at which a vessel will call.

The contractor shall arrange for each lot of grain covered by an official domestic weight and grade certificate to be identity preserved when placed f.a.s.

18. FAR and Agriculture Acquisition Regulation (AGAR) Provisions and Clauses:
A. This solicitation shall be subject to the terms and conditions of KCCO's Master Solicitation for Commodity Procurements (MSCP) in effect as of the date of this solicitation and can be found at:
http://www.fsa.usda.gov/FSA/webapp?area=home&subject=coop&topic=pas-ex-cr. The FAR and AGAR provisions and clauses applicable to this solicitation are contained in the MSCP.

B. / / Applicable if checked. FAR Clause 52.232-18, Availability of Funds (Apr 1984). Funds are not presently available for this contract. The Government's obligation under this contract is contingent upon the availability of appropriated funds from which payment for contract purposes can be made. No legal liability on the part of the Government for any payment may arise until funds are made available to the contracting officer for this contract and until the contractor receives notice of such availability, to be confirmed in writing by the contracting officer. (End of clause)

19. To All Steamship Lines:
Steamship lines not currently participating in programs to which this Solicitation applies should notify FSA, International Procurement Division, (816) 926-6043 ten (10) days prior to submission of bids. Information regarding ocean carrier services for export shipments steamship lines is available at:
http://www.fsa.usda.gov/FSA/webapp?area=home&subject=coop&topic=trs-oc.

Steamship rates and service for commodities on this Solicitation shall apply through January 31, 2007 and excludes f.a.s Great Lakes ports. Bid rates shall be inclusive of any applicable terminal handling charges referenced in ocean carrier's tariff.

Bids For Services Due/Local Time: 10:00 A.M., October 23, 2006, FAX to International Procurement Division, Procurement Support Branch, (816) 926-6767.

Intended countries of destination are provided only as a matter of information and are subject to change.

PLEASE NOTE ADDITIONAL FUMIGATION REQUIREMENTS FOR ALL PURPOSE FLOUR. Steamship line bids must include cost of pre-loading fumigation, and will be considered in determining lowest-landed cost. Fumigation cost must be identified in all offers. Fumigation must be performed according to All Purpose Flour requirements shown above and Commodity Operations Fumigation Protocol Notice to the Trade EOD-83 on the Internet at http://www.fsa.usda.gov/daco/notices.htm, notwithstanding the time frames referenced in subsection B. Exception: Flour delivered to f.a.s. Houston requires fumigation by the ocean carrier rather than the commodity contractor.

Robert Buxton
Contracting Officer, USDA

DESTINATION SUMMARY

| Comm. Req. | Prod. Type | Pack Size | Country | Discharge Port | Metric Tons | Vol. Agency |
|---|---|---|---|---|---|---|
| BWSF10 | BW | 50 KG | GUINEA | CONAKRY | 1,350 | WFP |
| | | | LIBERIA | MONROVIA | 5,100 | WFP |
| | | | SENEGAL | DAKAR | 450 | CPI |
| | | | | BW CMDY TOTAL | 6,900 | |
| | SB | 50 KG | GHANA | TEMA | 1,000 | CRS |
| | | | | TEMA | 400 | ADRA |
| | | | HAITI | * GONAIVES | 1,110 | CARE |
| | | | | **LES CAYES | 580 | CRS |
| | | | | * PORT AU PRINCE | 1,010 | WV |
| | | | | * PORT AU PRINCE | 1,100 | SC |
| | | | | **PORT AU PRINCE | 440 | CRS |
| | | | | SB CMDY TOTAL | 5,640 | |
| CM2 | CP | 25 KG | C. AFRICAN REP. | DOUALA | 1,380 | WFP |
| | | | HAITI | **PORT AU PRINCE | 20 | CRS |
| | | | IVORY COAST | ABIDJAN | 6,810 | WFP |
| | | | KENYA | MOMBASA | 2,000 | WFP |
| | | | | MOMBASA | 3,000 | WFP |
| | | | MALI | LOME | 2,700 | WFP |
| | | | | CP CMDY TOTAL | 15,910 | |
| CSB12 | CH | 25 KG | C. AFRICAN REP. | DOUALA | 110 | WFP |
| | | | CHAD | DOUALA | 1,390 | WFP |
| | | | LIBERIA | MONROVIA | 260 | WFP |
| | | | | CH CMDY TOTAL | 1,760 | |
| DPP3 | PF | 20 KG | SENEGAL | DAKAR | 70 | CPI |
| | | | | PF CMDY TOTAL | 70 | |
| KCBG7 | HR | 50 KG | JORDAN | AQABA | 700 | WFP |
| | | | MAURITANIA | NOUAKCHOTT | 1,180 | WFP |
| | | | | HR CMDY TOTAL | 1,880 | |
| | MI | 50 KG | SUDAN | DJIBOUTI | 1,490 | NPA |
| | | | | MI CMDY TOTAL | 1,490 | |
| MR19 | RI | 50 KG | BURKINA FASO | TEMA | 1,820 | AFRC |
| | | | | RI CMDY TOTAL | 1,820 | |
| PL2 | GP | 50 KG | AFGHANISTAN | QASIM | 3,500 | WFP |
| | | | | GP CMDY TOTAL | 3,500 | |
| | LE | 50 KG | HAITI | * GONAIVES | 550 | CARE |
| | | | | * PORT AU PRINCE | 320 | WV |
| | | | | * PORT AU PRINCE | 600 | SC |
| | | | SENEGAL | DAKAR | 330 | CPI |
| | | | SUDAN | DJIBOUTI | 220 | NPA |
| | | | | LE CMDY TOTAL | 2,020 | |
| | LT | 50 KG | SUDAN | MOMBASA | 720 | NPA |
| | | | | LT CMDY TOTAL | 720 | |
| | YS | 50 KG | C. AFRICAN REP. | DOUALA | 250 | WFP |
| | | | CHAD | BENGHAZI | 1,390 | WFP |
| | | | GUINEA | CONAKRY | 220 | WFP |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | LIBERIA | MONROVIA | 840 | WFP |
| | | | MALI | LOME | 700 | WFP |
| | | | | YS CMDY TOTAL | 3,400 | |
| | YE | 50 KG | KENYA | MOMBASA | 30 | WFP |
| | | | | MOMBASA | 270 | WFP |
| | | | | MOMBASA | 4,940 | WFP |
| | | | | MOMBASA | 3,590 | WFP |
| | | | | YE CMDY TOTAL | 8,830 | |
| SFSG12 | SH | 25 KG | GHANA | TEMA | 1,100 | CRS |
| | | | | SH CMDY TOTAL | 1,100 | |
| VO10 | SR | 6/4 L | AFGHANISTAN | QASIM | 5,370 | WFP |
| | | | C. AFRICAN REP. | DOUALA | 110 | WFP |
| | | | CHAD | BENGHAZI | 930 | WFP |
| | | | GUINEA | CONAKRY | 190 | WFP |
| | | | HAITI | * GONAIVES | 230 | CARE |
| | | | | **LES CAYES | 60 | CRS |
| | | | | * PORT AU PRINCE | 250 | WV |
| | | | | * PORT AU PRINCE | 200 | SC |
| | | | | **PORT AU PRINCE | 60 | CRS |
| | | | LIBERIA | MONROVIA | 240 | WFP |
| | | | MALI | LOME | 990 | WFP |
| | | | MAURITANIA | NOUAKCHOTT | 170 | WFP |
| | | | SENEGAL | DAKAR | 120 | CPI |
| | | | SUDAN | DJIBOUTI | 100 | NPA |
| | | | | MOMBASA | 410 | NPA |
| | | | | SR CMDY TOTAL | 9,430 | |
| WFBF3 | AP | 50 KG | KENYA | MOMBASA | 3,500 | WFP |
| | | | | AP CMDY TOTAL | 3,500 | |
| WSB14 | WP | 25 KG | GHANA | TEMA | 1,500 | CRS |
| | | | SENEGAL | DAKAR | 200 | CPI |
| | | | | WP CMDY TOTAL | 1,700 | |
| | WS | 25 KG | HAITI | *GONAIVES | 150 | CARE |
| | | | | *PORT AU PRINCE | 470 | WV |
| | | | | WS CMDY TOTAL | 620 | |
| | | | | SOLICITATION TOTAL | 70,290 | |

* CONTAINERIZATION REQUIRED
** CONTAINERIZATION REQUIRED - 20 FT CONTAINERS ONLY

HDR10105002200010200613OOKCCO EXPORT - SOLICITATION 116 AMENDMENT 1

Amendment to Solicitation for Commodities for Export Programs
Solicitation 116 Amendment 1, September 20, 2006

1. Solicitation Number: 116 Amendment 1

2. Solicitation Amendment Issue Date: October 20, 2006

Solicitation 116 is amended as follows:

Section 10. this Acquisition is amended as follows:

JAVITS, WAGNER, O'DAY ACT (JWOD) (41USC46-48c)
1,740 MT of vegetable oil quantity (20% of the quantity shown under the Schedule of Supplies) is reserved for mandatory procurement from the Government's approved JWOD participating nonprofit agency(ies) in accordance with the JWOD Act and FAR Subpart 8.7. In the event the government does not award the full quantity under the JWOD Act, the government may award the balance under full and open competition.

Section 15. Schedule of Supplies is amended as follows:

Bidders may submit bids for less than the quantities indicated. Bidders are encouraged to submit bids for as many shipping points as possible.

| Commodity Requirement | Commodity | Total Requested Metric Tons | SBA Set-Aside Metric Tons | 8(a) Set-Aside Metric Tons |
|---|---|---|---|---|
| BWSF10 | Bulgur Wheat | 6,450 | | |
| | Soy Fortified Bulgur | 6,090 | | |
| CM2 | Cornmeal | | 1,590 | |
| | High Performance Bags | 15,910 | | |
| CSB12 | Corn Soy Blend | | 180 | |
| | High Performance Bags | 1,760 | | |
| DPP3 | Dehydrated Potato Products | | | |
| | Potato Flakes | 70 | | |
| KCBG7 | Hard Red Winter Wheat | 1,880 | | |
| | Sorghum | 1,490 | | |
| MR19 | Milled Rice | 1,820 | | |
| PL2 | Peas and Lentils | | 10,900 | |
| | Green Peas | 3,500 | | |
| | Lentils | 2,740 | | |
| | Yellow Split Peas | 11,930 | | 910 |
| SFSG12 | Soy Fortified Sorghum Grits | 1,100 | | |
| VO10 | Vegetable Oil | | | |
| | 6/4 Liter Rounds | 8,680 | | |
| WFBF3 | All Purpose Flour | 3,500 | | |
| WSB14 | Wheat Soy Blend | | | |
| | High Performance Bags | 1,700 | | |
| | Regular Bags | 620 | | |
| | Solicitation Total | 69,240 | | |

Section 19. To All Steamship Lines is amended as follows:

The 720 MT of Lentils and the 8,830 MT of Yellow Split Peas destined for Mombasa, Kenya, must have APHIS certification of fumigation on the Phytosanitary Certificate. Ocean carriers must ensure that these commodities are fumigated in accordance with

APHIS requirements.

DESTINATION SUMMARY

| Comm. Req. | Prod. Type | Pack Size | Country | Discharge Port | Metric Tons | Vol. Agency |
|---|---|---|---|---|---|---|
| BWSF10 | BW | 50 KG | GUINEA | CONAKRY | 1,350 | WFP |
| | | | LIBERIA | MONROVIA | 5,100 | WFP |
| | | | | BW CMDY TOTAL | 6,450 | |
| | SB | 50 KG | GHANA | TEMA | 1,000 | CRS |
| | | | | TEMA | 400 | ADRA |
| | | | HAITI | * GONAIVES | 1,110 | CARE |
| | | | | **LES CAYES | 580 | CRS |
| | | | | * PORT AU PRINCE | 1,010 | WV |
| | | | | * PORT AU PRINCE | 1,100 | SC |
| | | | | **PORT AU PRINCE | 440 | CRS |
| | | | SENEGAL | DAKAR | 450 | CPI |
| | | | | SB CMDY TOTAL | 6,090 | |
| CM2 | CP | 25 KG | C. AFRICAN REP. | DOUALA | 1,380 | WFP |
| | | | HAITI | **PORT AU PRINCE | 20 | CRS |
| | | | IVORY COAST | ABIDJAN | 6,810 | WFP |
| | | | KENYA | MOMBASA | 2,000 | WFP |
| | | | | MOMBASA | 3,000 | WFP |
| | | | MALI | LOME | 2,700 | WFP |
| | | | | CP CMDY TOTAL | 15,910 | |
| CSB12 | CH | 25 KG | C. AFRICAN REP. | DOUALA | 110 | WFP |
| | | | CHAD | DOUALA | 1,390 | WFP |
| | | | LIBERIA | MONROVIA | 260 | WFP |
| | | | | CH CMDY TOTAL | 1,760 | |
| DPP3 | PF | 20 KG | SENEGAL | DAKAR | 70 | CPI |
| | | | | PF CMDY TOTAL | 70 | |
| KCBG7 | HR | 50 KG | JORDAN | AQABA | 700 | WFP |
| | | | MAURITANIA | NOUAKCHOTT | 1,180 | WFP |
| | | | | HR CMDY TOTAL | 1,880 | |
| | MI | 50 KG | SUDAN | DJIBOUTI | 1,490 | NPA |
| | | | | MI CMDY TOTAL | 1,490 | |
| MR19 | RI | 50 KG | BURKINA FASO | TEMA | 1,820 | AFRC |
| | | | | RI CMDY TOTAL | 1,820 | |
| PL2 | GP | 50 KG | AFGHANISTAN | QASIM | 3,500 | WFP |
| | | | | GP CMDY TOTAL | 3,500 | |
| | LE | 50 KG | HAITI | * GONAIVES | 550 | CARE |
| | | | | * PORT AU PRINCE | 320 | WV |
| | | | | * PORT AU PRINCE | 600 | SC |
| | | | SENEGAL | DAKAR | 330 | CPI |
| | | | SUDAN | DJIBOUTI | 220 | NPA |
| | | | | LE CMDY TOTAL | 2,020 | |
| | LT | 50 KG | SUDAN | MOMBASA | 720 | NPA |
| | | | | LT CMDY TOTAL | 720 | |

| | | | | | | |
|---|---|---|---|---|---|---|
| | YS | 50 KG | C. AFRICAN REP. | DOUALA | 250 | WFP |
| | | | CHAD | BENGHAZI | 1,390 | WFP |
| | | | GUINEA | CONAKRY | 220 | WFP |
| | | | LIBERIA | MONROVIA | 840 | WFP |
| | | | MALI | LOME | 400 | WFP |
| | | | | YS CMDY TOTAL | 3,100 | |
| | YE | 50 KG | KENYA | MOMBASA | 30 | WFP |
| | | | | MOMBASA | 270 | WFP |
| | | | | MOMBASA | 4,940 | WFP |
| | | | | MOMBASA | 3,590 | WFP |
| | | | | YE CMDY TOTAL | 8,830 | |
| SFSG12 | SH | 25 KG | GHANA | TEMA | 1,100 | CRS |
| | | | | SH CMDY TOTAL | 1,100 | |
| VO10 | SR | 6/4 L | AFGHANISTAN | QASIM | 5,370 | WFP |
| | | | C. AFRICAN REP. | DOUALA | 110 | WFP |
| | | | CHAD | BENGHAZI | 930 | WFP |
| | | | GUINEA | CONAKRY | 190 | WFP |
| | | | HAITI | * GONAIVES | 230 | CARE |
| | | | | **LES CAYES | 60 | CRS |
| | | | | * PORT AU PRINCE | 250 | WV |
| | | | | * PORT AU PRINCE | 200 | SC |
| | | | | **PORT AU PRINCE | 60 | CRS |
| | | | LIBERIA | MONROVIA | 240 | WFP |
| | | | MALI | LOME | 240 | WFP |
| | | | MAURITANIA | NOUAKCHOTT | 170 | WFP |
| | | | SENEGAL | DAKAR | 120 | CPI |
| | | | SUDAN | DJIBOUTI | 100 | NPA |
| | | | | MOMBASA | 410 | NPA |
| | | | | SR CMDY TOTAL | 8,680 | |
| WFBF3 | AP | 50 KG | KENYA | MOMBASA | 3,500 | WFP |
| | | | | AP CMDY TOTAL | 3,500 | |
| WSB14 | WP | 25 KG | GHANA | TEMA | 1,500 | CRS |
| | | | SENEGAL | DAKAR | 200 | CPI |
| | | | | WP CMDY TOTAL | 1,700 | |
| | WS | 25 KG | HAITI | *GONAIVES | 150 | CARE |
| | | | | *PORT AU PRINCE | 470 | WV |
| | | | | WS CMDY TOTAL | 620 | |
| | | | | SOLICITATION TOTAL | 69,240 | |

* CONTAINERIZATION REQUIRED
** CONTAINERIZATION REQUIRED - 20 FT CONTAINERS ONLY

AMMENDMENTS INCLUDE:

Change commodity type for 450 MT of Bulgur Wheat to Senegal to Soy Fortified Bulgur Wheat.

Remove 300 MT of Yellow Split Peas and 750 MT of Vegetable Oil to Mali, Port of Lome. Solicitation total and set-asides adjusted accordingly.

Adjust the tonnage available for procurement under the JWOD Act.

Add requirement for ocean carriers.

All other information remains unchanged.

Todd Shuck
Contracting Officer, USDA

HDR10105002200010300613OOKCCO EXPORT - SOLICITATION 116 AMENDMENT 2

Amendment to Solicitation for Commodities for Export Programs
Solicitation 116 Amendment 2, October 30, 2006

1. Solicitation Number: 116 Amendment 2

2. Solicitation Amendment Issue Date: October 30, 2006

Solicitation 116 is amended as follows:

Section 15. Schedule of Supplies is amended as follows:

Bidders may submit bids for less than the quantities indicated. Bidders are encouraged to submit bids for as many shipping points as possible.

| Commodity Requirement | Commodity | Total Requested Metric Tons | SBA Set-Aside Metric Tons | 8(a) Set-Aside Metric Tons |
|---|---|---|---|---|
| VO10 | Vegetable Oil | | | |
| | 6/4 Liter Rounds | 7,880 | | |
| | 6/4 Liter Round Tins Or 6/4 Liter Plastic Bottles | 800 | | |
| | Solicitation Total | 69,240 | | |

Commodity requirements are available at:
http://www.fsa.usda.gov/FSA/webapp?area=home&subject=coop&topic=pas-ex-cr

Unique Commodity Specifications Required for this Solicitation:

VO10 - VEGETABLE OIL PRODUCTS

The 4-Liter units of Vegetable oil to Haiti shall be packed in either metal tin cans or plastic bottles. Suppliers shall use either product code "SR" or "OP" when submitting bids for the quantity to Haiti.

Section 19. To All Steamship Lines is amended as follows:

DESTINATION SUMMARY

| Comm. Req. | Prod. Type | Pack Size | Country | Discharge Port | Metric Tons | Vol. Agency |
|---|---|---|---|---|---|---|
| VO10 | SR | 6/4 L | AFGHANISTAN | QASIM | 5,370 | WFP |
| | | | C. AFRICAN REP. | DOUALA | 110 | WFP |
| | | | CHAD | BENGHAZI | 930 | WFP |
| | | | GUINEA | CONAKRY | 190 | WFP |
| | | | LIBERIA | MONROVIA | 240 | WFP |
| | | | MALI | LOME | 240 | WFP |
| | | | MAURITANIA | NOUAKCHOTT | 170 | WFP |
| | | | SENEGAL | DAKAR | 120 | CPI |
| | | | SUDAN | DJIBOUTI | 100 | NPA |
| | | | | MOMBASA | 410 | NPA |
| | | | | SR CMDY TOTAL | 7,880 | |
| | SR or OP | 6/4 L | HAITI | * GONAIVES | 230 | CARE |
| | | | | **LES CAYES | 60 | CRS |
| | | | | * PORT AU PRINCE | 250 | WV |

| | | |
|---|---|---|
| * PORT AU PRINCE | 200 | SC |
| **PORT AU PRINCE | 60 | CRS |
| SR or OP CMDY TOTAL | 800 | |
| SOLICITATION TOTAL | 69,240 | |

* CONTAINERIZATION REQUIRED
** CONTAINERIZATION REQUIRED - 20 FT CONTAINERS ONLY

AMMENDMENTS INCLUDE:

Change the requirements for Vegetable Oil to Haiti to accept either 6/4 Liter Round Tins or 6/4 Liter Plastic Bottles. Subtotals adjusted accordingly. Solicitation total remains unchanged.

All other information remains unchanged.

Robert Buxton
Contracting Officer, USDA

# EXHIBIT B

**Jim McPherson Jr**

**From:** Carl Dahl [carl@superiorgrains.com]
**Sent:** Wednesday, November 01, 2006 7:06 PM
**To:** James Mcpherson, Jr.
**Cc:** Les Knudson; Becky Knudson
**Subject:** Offers for KCCO 116

Jim:

Superior Grains, Inc. offers the following:

10 hopper cars, Lentils, US#3 or better, bulk from Crosby, ND on CPRS, @$242/MT
10 hopper cars, Green Peas, US#2 or better, bulk from Williston on BNSF/Crosby on CPRS, @$204/MT
Grade and weight final at Origination.

Carl H. Dahl, Jr.
Sales
Superior Grains, Inc.
P.O. Box 109
206 Main Street
Crosby, ND 58730
701-965-6241
701-965-6250 FAX
carl@superiorgrains.com

# EXHIBIT C

CONTRACT AWARD NOTICE
EXPORT

| CONTRACTOR | CONTRACT DATE | CONTRACT NUMBER |
|---|---|---|
| FAX 8322018472 | | |
| COMMODITY SOLUTIONS LLC<br>700 GEMINI ROAD STE #100<br>HOUSTON TX 770580000 | 11/02/06 | VEP203162 |

SUBJECT PEAS AND LENTILS ANNOUNCEMENT PL2 AS AMENDED
INVITATION NO. 116

THE GOVERNMENT ACCEPTS OFFER ITEMS FOR PLANT(S)
COMMODITY SOLUTIONS LLC HOUSTON TX

---

| (APPROX. METRIC MEASURE) | | | (ENGLISH MEASURE EQUIVALENT) |
|---|---|---|---|
| PEAS-D WHL GRN | | 50 KG BAG | |
| | 900 MT @ $ | 235.35 MT | 1,984,140 LBS @ $10.6754 CWT |
| | 900 MT @ $ | 246.35 MT | 1,984,140 LBS @ $11.1744 CWT |
| SUB TOTAL | 1,800 MT. | | 3,968,280 LBS |
| LENTILS, DRY ED | | 50 KG BAG | |
| | 900 MT @ $ | 278.85 MT | 1,984,140 LBS @ $12.6486 CWT |
| TOTAL | 2,700 MT | | 5,952,420 LBS |

Robert Buxton

ROBERT BUXTON
CONTRACTING OFFICER, USDA
KANSAS CITY COMMODITY OFFICE

# EXHIBIT D

**Jim McPherson Jr**

**From:** Carl Dahl [carl@superiorgrains.com]
**Sent:** Friday, November 03, 2006 6:08 PM
**To:** James Mcpherson, Jr.
**Cc:** Les Knudson; Becky Knudson
**Subject:** Offers for KCCO 116

Jim:

Per our phone conversation, this is very unfortunate, as soon as I saw the results from KCCO, I knew there was a problem. We offered as below just like the yellow splits at our plant. You needed to add the freight and that is why I gave you the plant and the railroad origination so you knew which rate to bid. I hope they will let you out of your bid. Thanks.

Jim:

Superior Grains, Inc. offers the following:

10 hopper cars, Lentils, US#3 or better, bulk from Crosby, ND on CPRS, @$242/MT
10 hopper cars, Green Peas, US#2 or better, bulk from Williston on BNSF/Crosby on CPRS, @$204/MT
Grade and weight final at Origination,

Carl H. Dahl, Jr.
Sales
Superior Grains, Inc.
P.O. Box 109
206 Main Street
Crosby, ND 58730
701-965-6241
701-965-6250 FAX
carl@superiorgrains.com

--
No virus found in this incoming message.
Checked by AVG Free Edition.
Version: 7.1.409 / Virus Database: 268.13.27/517 - Release Date: 11/3/2006

# EXHIBIT E

USDA

**United States Department of Agriculture**

Farm and Foreign Agricultural Services

Farm Service Agency

Kansas City Commodity Office
P.O. Box 419205
Kansas City, Missouri
64141-6205

Certified Mail, Return Receipt Requested
Fax: 713-678-7410

January 17, 2007

Mr. James McPherson, Jr., President
Commodity Solutions, LLC
700 Gemini Road, Ste 100
Houston, Texas 77058

Re: Final Decision on Mistake in Bids on Contract VEP203162

Dear Mr. McPherson:

This letter constitutes my final decision as Contracting Officer on the error in bids alleged by your firm on the above-referenced contract. I am issuing a Final Decision as Contracting Officer pursuant to the Disputes Clause of the contract.

Dispute

Your firm alleges that it committed an error when it submitted its bid for the procurement of whole green peas and lentils under our Invitation For Bids (IFB) 116. You have stated that your offer failed to include the cost for domestic transportation of the bulk commodity to your bagging facility.

Facts

The Kansas City Commodity Office issued IFB 116 on November 3, 2006, for, among other commodities, 3,500 metric tons of whole green peas and 2,740 metric tons of lentils. In response to the solicitation eight firms submitted offers on the green peas and ten firms submitted twelve offers on the lentils. The bids were examined by the Agricultural Marketing Specialist assigned those commodities for clerical errors and mistakes. There were no apparent errors or mistakes noted.

On the basis of the bids submitted, we awarded to your firm on November 2, 2006, a contract to provide 900 metric tons of whole, green peas delivered intermodal plant Houston at $235.35 per metric ton, 900 metric tons of whole, green peas delivered intermodal plant at $246.35 per metric ton, and 900 metric tons of lentils delivered to f.a.s. Jacintoport, Texas, at $278.85 per metric ton.

On November 3, 2006, you telephoned Mr. Nelson Randall, Chief, International Procurement Division, and alleged that you had made a mistake in the bid you submitted for IFB 116. Mr. Randall told you that you would need to put your allegation in writing and send it to the Contracting Officer. On November 9, 2006, I received a letter from you

explaining that you had failed include the cost of railroad freight to move bulk commodity from North Dakota to Houston in your bid prices. You asked what options were available to you to resolve the problem.

On November 14, 2007, I replied to your letter with a letter explaining that FAR Part 14.407-4 governed the Government's actions with regard to addressing your allegation. I instructed you to submit, as indicated by FAR 14.407-4(e)(1), whatever evidence you had to support your claim.

On January 3, 2007, I received the evidence and written statements you wished me to consider in processing your mistake in bid.

Decision

You have alleged that the bid prices you submitted under IFB 116 did not include the cost of domestic transportation to move the necessary bulk commodities to your facility in Houston. The evidence you have provided consists of:

1. a cover letter explaining that you had failed to include the cost of domestic rail freight to move bulk green peas and lentils from North Dakota to Houston,
2. a sheet of paper listing those cost components that went into the lentil bid as submitted and listing those cost components that went into the lentil bid plus the claimed rail freight cost,
3. a signed statement by you explaining how the mistake occurred,
4. correspondence consisting of the original letter submitted by the firm to Mr. Randall and my letter of November 14,
5. a copy of FAR Part 14.407-4,
6. a copy of a letter from Jacintoport, Texas, stating the inbound and bagging rate at that facility,
7. copies of e-mails from the bulk green pea and lentil supplier stating the cost to purchase the bulk commodity for the IFB at issue and also IFB 116,
8. support documentation (sales agreement, invoice, and bills of lading) from an IFB 096 contract with this office,
9. a copy of the original bid document.

In the event of a mistake in bid, the FAR authorizes the Government to do one of three things; to rescind the contract, to reform the contract to delete the items involved, or to increase the contract price so long as it, as corrected, does not exceed the next lowest price. However, two tests must be met in order for the Government to take one of these three actions. There must be clear and convincing evidence of the mistake and the intended bid, and the mistake must either be mutual or so apparent as to put the Contracting Officer on notice that there was a problem with the bid. The burden is on you to provide this evidence. Based on what you have submitted, I have determined that there was no mutual mistake made on this procurement and, if a mistake was made, it was unilateral and not sufficiently obvious to have put the Government on notice that it was probable.

On the question of whether the evidence you have provided is clear and convincing that a mistake in bid was made, I cannot state that I consider the evidence to be clear and

convincing. You note in your signed statement that typical transactions are made on an f.o.b. destination basis, meaning the cost of freight is paid by the seller. The September 2006 contract documentation (item 8) is clear as to the terms of sale and it does state delivery basis is to be f.o.b. destination at Houston. So, there is evidence that for at least one supplier contract your customary commercial practice is to buy bulk product on an f.o.b. destination basis. But, the primary evidence you have submitted are the e-mails from Superior Grains (item 7). These e-mails consist of one dated November 1, 2006, stating their indication of interest to sell you green peas and lentils, one dated November 3, 2006, stating essentially that the price did not include freight, one dated November 6, 2006, inquiring about the mistake and stating that freight would be more than $70 per metric ton, and one dated September 18, 2006, offering to sell to Commodity Solutions 900 metric tons of split yellow peas f.o.b. origin at their Williston, North Dakota facility. Therefore, based on the evidence you have provided, it appears that either delivery basis can be used in the commercial bulk pea and lentil trade. For this procurement, however, you have provided the November 1, 3, and 6, 2006, e-mails from Superior Grains as evidence that the deliver terms were f.o.b. origin. The problem I have is that the November 1 e-mail offering to sell you the bulk peas and lentils is not specific as to the delivery basis. I am unable to determine from the contents of the e-mail what the delivery basis is for the product offered for sale. It appears possible that the delivery basis could be f.o.b. Houston and therefore includes the cost of freight. You have provided no evidence existing prior to the bid deadline that would clarify the actual delivery basis intended by Superior Grains. The statements made by Superior Grains after the bids are exposed and contract awards made are not as persuasive as would be evidence that pre-dated bid opening.

The only other document you have submitted that relates directly to a specific cost component of your bid price is a January 9, 2006, letter from the port of Jacintoport (item 6) stating the rate they would charge for receiving and bagging cargo. This would document a cost component for the lentils only, as the green peas were purchased on a plant basis.

The price worksheet that you submitted would appear to have been created after the fact since it includes a summary of your costs first without a freight component and then with a freight component. I would have the expectation that you would have other documentation ready at hand to submit as soon as possible after contract award. There were no worksheets; no other data or documents submitted that might establish the other component costs that would be included in your intended bid. On the face of the evidence submitted, in particular the very vague e-mail from Superior Grains which provides no clear indication of the delivery basis one way or the other, I am unable to reach the conclusion that there is clear and convincing evidence that a mistake was made.

On the question of the obviousness of the alleged mistake, I am unable to stipulate that the alleged mistake for either the green peas or the lentils was so apparent to the Government as to have put us on notice that there was a mistake. This office uses two primary means for identifying questionable bids; the comparison of the bids received to other bids received on the same solicitation for the same or similar commodity in the same delivery range and the comparison of bid prices on the solicitation to recent contract award prices for the same or similar commodity in the same delivery range. Most of our contracts are awarded for delivery to f.a.s. vessel to load ports in the Gulf. However, since your plant is located in the Port of Houston, it would be reasonable to look at f.a.s. Gulf pricing for purposes of

comparison to your plant-basis bids. What we have found in terms of prices for those and similar commodities is that there is a good deal of price volatility. In general, it is not unusual for us to see a sizable difference in pea and lentil prices submitted by bidders. In fact, sizable price differences can be seen in contract awards also. We attribute this in large part to the quantities solicited and the volume of commodity available for purchase.

Regarding the green peas, the prices awarded to your firm were $235.35 and $246.35 for delivery at your plant located at port. On this procurement we received no other offers from firms with plants located at port or from firms offering delivery to f.a.s. Gulf. However, the prices awarded were in line with another award to your firm on IFB 096 two months previous. On that contract the prices awarded were $237.25 and $242.24 for delivery at your plant. On the basis of this information I cannot stipulate that the Government should have questioned your green pea bid price.

Regarding the lentils, the price we awarded your firm was $278.85 for delivery f.a.s. vessel Houston. The other prices awarded for lentils to an f.a.s. vessel position in the Gulf range were $310.99 and $319.81. This would represent differences of $32.14 and $40.96, respectively. These figures do not constitute a large enough spread to have alerted the Government to the possibility of a mistake. We have had occasion within the last year to see similar price differences on contracts for lentils. On our IFB 086A we purchased 2,440 metric tons of lentils delivered f.a.s. vessel the Gulf at prices of $396.80, $418.80, $437.51. These prices yield a price difference between the lowest and next lowest price of $22 and a difference between the lowest and highest price paid of $40.71. As a point of comparison, on our IFB 086, two weeks prior to our IFB 086A, we purchased 2,040 metric tons of lentils delivered f.a.s. vessel the Gulf ranging in price from $272.09 to $290.83. The difference between lowest and highest price is $18.74. For our IFB 036 we procured 17,660 metric tons of lentils delivered to the Gulf at prices ranging from $306.15 to $340.46, yielding a spread of $34.31. Given the volatility of lentil prices in the recent past and the kind of price differences on individual procurements, I am unable to stipulate that the prices you submitted for lentils on IFB 116 were so out of line with recent pricing information as to have given the Government notice of a possible mistake.

As a result of the foregoing, your allegation of mistake in bid cannot be accepted and I have no basis for considering any of the remedies available under FAR 14.407-4. The result is that the contract remains as originally awarded. This constitutes my final decision as the Contracting Officer. You may appeal this decision to the U. S. Department of Agriculture Board of Contract Appeals. If you decide to appeal, you must, within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the agency board of contract appeals and provide a copy to the Contracting Officer from whose decision this appeal is taken. The notice shall indicate that an appeal is intended, reference this decision, and identify the contract by number. With regard to appeals to the agency board of contract appeals, you may, solely at your election, proceed under the board's small claim procedure for claims of $50,000 or less or its accelerated procedure for claims of $100,000 or less. Instead of appealing to the agency board of contract appeals, you may bring an action directly in the United States Court of Federal Claims within 12 months of the date you receive this decision. Appeals to the Board of Contract Appeals should be addressed to:

Board of Contract Appeals
United States Department of Agriculture
Washington, D.C. 20250-0600

The rules of practice and procedure for the Board of Contract Appeals are found at Title 7 CFR, Part 24.

Sincerely,

Robert Buxton
Contracting Officer

Is your RETURN ADDRESS completed on the reverse side?

**SENDER:**
- Complete items 1 and/or 2 for additional services.
- Complete items 3, 4a, and 4b.
- Print your name and address on the reverse of this form so that we can return this card to you.
- Attach this form to the front of the mailpiece, or on the back if space does not permit.
- Write "*Return Receipt Requested*" on the mailpiece below the article number.
- The Return Receipt will show to whom the article was delivered and the date delivered.

I also wish to receive the following services (for an extra fee):

1. ☐ Addressee's Address
2. ☐ Restricted Delivery

Consult postmaster for fee.

3. Article Addressed to:

Mr. James McPherson, Jr., Pres.
Community Solutions, LLC
700 Gemini Road, Ste. 100
Houston TX 77058

4a. Article Number
7000-0600-0024-4881-368

4b. Service Type
☐ Registered ☒ Certified
☐ Express Mail ☐ Insured
☐ Return Receipt for Merchandise ☐ COD

7. Date of Delivery
JAN 1/22/07

5. Received By: *(Print Name)*
Belinda Long

6. Signature: *(Addressee or Agent)*
X Belinda Long

8. Addressee's Address *(Only if requested and fee is paid)*

PS Form **3811**, December 1994 102595-98-B-0229 Domestic Return Receipt

# EXHIBIT F

USDA

Certified Mail, Return Receipt Requested
Fax: 713-678-7410

United States
Department of
Agriculture

Farm and Foreign
Agricultural Services

Farm Service
Agency

Kansas City
Commodity Office
P.O. Box 419205
Kansas City,
Missouri
64141-6205

January 22, 2007

Mr. James W. McPherson, Jr., President
Commodity Solutions, LLC
700 Gemini Road, Ste 100
Houston, Texas 77058

Re: Partial Termination of Contract VEP203162
900 Metric Tons of Lentils

Dear Mr. McPherson:

The referenced contract was awarded to you on November 2, 2006, for the purchase of 1,800 metric tons of green peas to be shipped on an intermodal plant basis and 900 metric tons of lentils to be shipped on an f.a.s. vessel basis to Jacintoport, Texas. The contract terms required shipment from December 27, 2006, through January 20, 2007.

On January 12, 2007, in a telephone call you informed this office of the following:

- that the bulk lentils were going to be shipped immediately from North Dakota to your Houston facility and the bulk peas in one week;
- you had no explanation for the seven week delay in responding to my letter informing you of the steps you needed to take with regard to your mistake in bid allegation;
- you asked if the Government would accept yellow peas in place of green peas,
- you were continuing with the contract notwithstanding the financial ramifications you claimed would happen given the mistake in bid allegation.

We informed you that:

- you were obligated to continue performance notwithstanding your allegation of a mistake in bid;
- we would consider accepting yellow peas in place of the green peas;
- you would be receiving a show-cause notice;
- you should respond immediately with your plan to complete performance.

Later on January 12, 2007, I faxed and sent by certified mail a show-cause notice informing you that the Government considered that there was insufficient time left in the performance period for completion of the contract.

On January 18, 2007, I spoke with you by telephone and informed you that that the Government would accept yellow peas in place of green peas at the original price. I followed up that conversation with an e-mail the same day stating that we would accept the yellow peas with all other contracts terms remaining the same.

On January 19, 2007, you sent me an e-mail stating that you could perform the contract, but, only if the price for both the peas and lentils was increased. That e-mail stated that the lentils were "in the process of being loaded." I replied by e-mail the same day refusing your plan for completion of the contact because you asked for a price increase for the peas and lentils and the information we had received from the freight forwarders indicated that the vessel time frame was shorter than you were stating it to be. I further stated that we intended to partially terminate the lentil portion of your contract January 22, 2007, and asked your intentions regarding the yellow pea portion of the contract.

On January 21, 2006, I received an e-mail from you stating that your firm had made arrangements for lentils to be shipped to Jacintoport. You stated that they were shipped January 15, 2007. I have received no evidence of the shipment of these lentils and would note that your e-mail of January 19 stated that the lentils were being loaded at that time. Therefore, I have conflicting information from your two e-mails regarding the shipping of the lentils and no evidence as to what has been shipped, if anything. I believe you have had ample opportunity to provide evidence that you are performing on the lentil portion of this contract. I have received none from you. In addition to the undocumented and conflicting information surrounding the shipment of lentils, it appears to me that you will not perform this portion of the contract unless the Government adjusts your price to $319.80 per metric ton, which is one cent below the next lowest lentil price awarded. To accede to your request to adjust the contract price upward would constitute collusion. I am unable to consider any request to adjust the prices of the contract other than as provided in FAR Part 14.407-4, i.e., change your price to your intended bid, and I have already issued my final decision denying your alleged mistake in bid.

The shipping period for this contract ended January 20, 2007. You have failed to perform on the lentils under this contract. As a result, I am taking action to partially terminate the lentil portion of Commodity Solutions' contract and your right to proceed for the lentils under the contract is hereby terminated. The Government may purchase the terminated supplies against Commodity Solutions' account and you will be liable for any re-procurement costs the Government may incur. I have determined that the failure to perform the contract is not excusable and this notice constitutes my decision of such determination. Under the Disputes Clause, 52.233-1, of the contract, you have the right to appeal this decision.

The Government reserves all rights and remedies provided by law or under the contract, in addition to charging you with excess costs. The final claim amount is yet to be determined. As soon as it is established, you will be informed.

Sincerely,

Robert Buxton

Robert Buxton
Contracting Officer,
USDA

Jan 29 2007 6:42PM 281-488-5353 p.1

U.S. OFFICIAL MAIL
PENALTY FOR PRIVATE USE $300
UNITED STATES POSTAGE
PITNEY BOWES
02 1A
0004205552
$ 04.64
JAN 24 2007
MAILED FROM ZIP CODE 64133

CERTIFIED MAIL

7000 0600 0024 4661 3669

UNITED STATES DEPARTMENT OF AGRICULTURE
FARM SERVICE AGENCY
PO BOX [illegible]
KANSAS CITY, MISSOURI 64141-6205

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE $300
RETURN SERVICE REQUESTED

Mr. James W. McPherson, Jr., President
Commodity Solutions, LLC
700 Gemini Road, Ste 100
Houston, Texas 77058

Signed For
Jan, 29, 2007
3:01 AM